1  Eric O'Connor (AZ SBN 032316)
   OH Law Group PLLC
2  527 W. 7TH ST., Suite 800
   Los Angeles, CA 90014
3  Tel (310) 742-7600

4
   Plaintiff Julie Hurt,
5

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JULIE HURT, an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | |
| MIGNACCA, LLC; CARLA EVALENA MIGNACCA MUNSAMY, an individual; STEPHEN LARKIN, an individual; and DOES 1-5, INCLUSIVE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW Plaintiff JULIE HURT, an individual ("HURT"), and based on knowledge as to herself and on information as to all others, complains and alleges of the Defendants, and each of them, as follows:

## **PARTIES**

1.  HURT is, and at all times material hereto was, an individual residing in the city of Phoenix in County of Maricopa.

2.  HURT was employed by MIGNACCA, LLC as a bridal consultant / sales associate during the summer months of 2016 and later promoted in January 2017 as a manager at the bridal boutique.

- 1 -
COMPLAINT FOR DAMAGES

3. Defendant MIGNACCA, LLC dba Bridal Boutique of Arizona ("BRIDAL BOUTIQUE") is an Arizona corporation doing business at 2501 N. 7th Street, Phoenix, AZ 85006.

4. BRIDAL BOUTIQUE is in the business of selling dresses to brides.

5. Defendant Carla Evalena Mignacca Munsamy ("CARLA") is, and at all times material hereto was, an individual residing in the city of Scottsdale in County of Maricopa.

6. CARLA was the sole majority owner of BRIDAL BOUTIQUE until August 2017.

7. Defendant Stephen Larkin ("LARKIN") upon information and belief is, and at all times material hereto was, in individual residing in the city of Maricopa in county of Maricopa.

8. LARKIN is the new business partner of CARLA at BRIDAL BOUTIQUE effective November 2017.

9. The true names and capacities of defendants DOES 1-5, inclusive, whether individual, corporate, associate, or otherwise, are unknown to HURT at this time, who therefore sues said defendants by such fictitious names; when the true names and capacities of such defendants are ascertained, HURT will seek leave of Court to amend this Complaint to insert name. HURT is informed and believes and thereon alleges that each defendant named as DOE is responsible for each and every act and obligation hereinafter set forth.

**JURISDICTION AND VENUE**

10. This complaint alleges causes of action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C § 1331. This complaint also alleges causes of action under Arizona state laws that arise out of the same set of operative facts as the federal cause of action. Accordingly, this Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b) and (c), because Defendants conduct business in this District and because Defendants failed to pay Plaintiffs wages for services performed in Arizona.

//

**NATURE OF THE CASE**

12. The Fair Labor Standards Act ("FLSA") is designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers" 29 U.S.C. § 202(a). To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers. 29 U.S.C. §§ 206(a) & 207(a).

13. Employers must compensate employees for all work that employers permit employees to perform. See 29 C.F.R. § 785.11. In such cases, it is the responsibility of employers' management to ensure that work is not performed if management does not desire for such work to be performed. 29 C.F.R. § 785.13. Employers may not accept the benefits of employees performing work without compensating the employees for their work. Id.

14. HURT brings this action against BRIDAL BOUTIQUE for unlawful failure to pay wages, overtime wages, and minimum wages in direct violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and specifically the overtime provision of the Act found at §207(a) and §206.

15. For at least 6 MONTHS prior to the filing of this action, BRIDAL BOUTIQUE had a consistent policy and practice of not paying the hourly minimum wage to HURT while requiring her to work.

16. For at least 6 MONTHS prior to the filing of this action, BRIDAL BOUTIQUE had a consistent policy and practice of requiring HURT to work well in excess of forty (40) hours per week without paying HURT time and a half for hours worked over forty (40) hours per week.

17. For at least 6 MONTHS prior to the filing of this action, HURT worked at least thirty to forty (30-40) hours in excess of forty (40) hours per week and was not paid time at time and a half.

18. As a direct and proximate result of BRIDAL BOUTIQUE's willful and knowing violation of the FLSA as alleged herein, HURT seeks unpaid overtime wages at time and one half of her regular rate, liquidated damages in an equal amount, plus attorney fees, interest, and costs,

for herself for the applicable period preceding the filing of this action pursuant to 29 U.S.C. §216(b).

19.     On or around August 2017, CARLA and HURT entered into an agreement where HURT would be fifty percent (50%) owner in BRIDAL BOUTIQUE with CARLA retaining fifty percent (50%).

20.     HURT took out loans in the amount of $20,067 from Pearl Capital on August 22, 2017, $30,000 from Yellowstone Financial on September 11, 2017, and $10,000 from ML Factors on September 29, 2017 totaling over $60,000 as an owner and partner in BRIDAL BOUTIQUE.

21.     CARLA and BRIDAL BOUTIQUE needed the loans to keep the business afloat.

22.     HURT continued to be paid as an employee of BRIDAL BOUTIQUE as she ran and operated the daily business of the business.

23.     BRIDAL BOUTIQUE abruptly stopped making payments to HURT and as a result, HURT was unable to cash payroll checks signed by CARLA dated October 14, 2017 for one thousand five hundred dollars ($1,500.00), October 28, 2017 for one thousand five hundred dollars ($1,500.00), November 11, 2017 for one thousand five hundred dollars ($1,500.00), and November 30, 2017 for six thousand dollars ($6,000.00) for a total of ten thousand five hundred dollars in unpaid wages ($10,500.00).

24.     On or around December 22, 2017 HURT received notice that her employment had been terminated with BRIDAL BOUTIQUE and that her membership interest agreement in BRIDAL BOUTIQUE had been voided and would not be honored due to HURT not assisting BRIDAL BOUTIQUE and CARLA in obtaining outside financing for BRIDAL BOUTIQUE.

25.     BRIDAL BOUTIQUE and CARLA blatantly disregard the $60,000 in loans that HURT contributed to BRIDAL BOUTIQUE just months prior.

26.     Upon information and belief, on around November 2017, CARLA met LARKIN. CARLA told HURT that LARKIN would be assisting them in finding loans for BRIDAL BOUTIQUE.

COMPLAINT FOR DAMAGES

27. Upon information and belief, on around December 2017, CARLA and LARKIN began a romantic relationship and formulated a plan to push HURT out of ownership in BRIDAL BOUTIQUE.

28. LARKIN was aware that HURT and CARLA owned BRIDAL BOUTIQUE as equal partners.

29. Upon information and belief, LARKIN caused CARLA to distrust HURT to a point where CARLA changed the locks to the boutique and threatened legal action if HURT were to return.

30. Shortly thereafter, LARKIN and CARLA removed HURT from the articles of incorporation for BRIDAL BOUTIQUE and LARKIN is now named as an owner of BRIDAL BOUTIQUE.

31. Additionally, HURT received a phone call from David Smith an employee of Pronovias, a dress company that was one of BRIDAL BOUTIQUE's biggest accounts. During the phone call, David Smith tells HURT that CARLA told him that HURT had embezzled $300,000 from BRIDAL BOUTIQUE, stole over 100 dresses, and ruined the business.

32. These false allegations have defamed HURT's reputation in the small wedding industry and as a result, HURT has suffered damages.

**FACTS COMMON TO ALL CAUSES OF ACTION**

33. HURT was a non-exempt employee employed by BRIDAL BOUTIQUE.

34. HURT was originally employed as a bridal consultant / sales associate for BRIDAL BOUTIQUE.

35. HURT was later promoted to Manager.

36. HURT's job duties included sales, employee training, and general management.

37. BRIDAL BOUTIQUE employed HURT from June 2016 until December 2017.

38. HURT worked at least five days per week and at least 8 hours per day.

39. HURT regularly worked 70 to 80 hours in a work week.

40. HURT regularly worked 6 days in a work week.

41. BRIDAL BOUTIQUE has not made a payroll payment to HURT since at least October 2017.

42. During HURT's employment with BRIDAL BOUTIQUE, BRIDAL BOUTIQUE failed to pay HURT minimum wage for all hours worked during the applicable time period.

43. During HURT's employment with BRIDAL BOUTIQUE, BRIDAL BOUTIQUE failed to pay HURT for overtime hours worked by HURT.

44. During HURT's employment with BRIDAL BOUTIQUE, BRIDAL BOUTIQUE failed to maintain accurate record keeping of HURT's hours worked.

45. During HURT's employment with BRIDAL BOUTIQUE, BRIDAL BOUTIQUE failed to provide HURT with accurate pay stubs for each pay period worked.

46. HURT was never provided with itemized wage statements.

47. HURT never receive itemized wage statements with all of her hours worked from BRIDAL BOUTIQUE.

48. Without accurate itemized wage statements, HURT was unable to determine if the appropriate pay rate has been documented by BRIDAL BOUTIQUE.

49. BRIDAL BOUTIQUE has been, at all times relevant hereto, HURT's employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and A.R.S. §§ 23-350, 362 and is liable to HURT for violations of his rights under the FLSA and Arizona law.

**FIRST CAUSE OF ACTION**

**Failure to Pay Wages, Overtime Compensation and Minimum Wage, and Failure to Maintain Records in Violation of the FLSA, 29 U.S.C. §§ 206, 207, 211**

(As to Defendant BRIDAL BOUTIQUE)

50. HURT re-alleges and incorporates the above paragraphs as though fully set forth herein.

51. As described above, HURT is a non-exempt employee who routinely worked in excess of 40 hours in a week, yet who, in violation of 29 U.S.C. § 207, was not paid overtime compensation for hours worked over 40 in a week. In short, BRIDAL BOUTIQUE has violated

the FLSA by failing to pay overtime compensation to HURT at an overtime rate of time-and-one-half her regular hourly rate of pay.

52. HURT's claim for failure to pay overtime compensation in violation of the FLSA applies to HURT. All other violations of the FLSA, namely the failure to pay the applicable minimum wage apply to BRIDAL BOUTIQUE.

53. BRIDAL BOUTIQUE violated the FLSA by knowingly failing to maintain records of all hours worked.

54. BRIDAL BOUTIQUE violated the FLSA by knowingly failing to compensate HURT for all hours worked and by knowingly failing to compensate them at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1).

55. BRIDAL BOUTIQUE violated the FLSA by knowingly failing to compensate HURT the federally mandated minimum wage in violation of 29 U.S.C. § 206 for all hours worked.

56. With respect to Plaintiff Hurt, she generally worked over eight hours per day, at least five days per week, often six times per week for BRIDAL BOUTIQUE. At times she worked up to 70-80 hours per week.

57. BRIDAL BOUTIQUE was willful in their violation of the FLSA. Accordingly, BRIDAL BOUTIQUE is liable under 29 U.S.C. § 216(b) to HURT for liquidated damages in an amount equal to the wages BRIDAL BOUTIQUE failed to pay as a result of the foregoing violation of 29 U.S.C. § 207.

58. Further, Section 211 of the FLSA, 29 U.S.C. §211(c), requires employers to maintain records of the hours worked and wages earned by their employees. CLEVER did not maintain accurate records of HURT's hours worked or wages earned, as required by 29 U.S.C. §211(c),

59. HURT is entitled to all of the unpaid wages, unpaid overtime compensation, plus an additional equal amount as liquidated damages, court costs, attorneys' fees and expenses they

expend in successfully bringing this action to recover their unpaid wages and any other relief deemed appropriate by the Court and/or as pursuant to 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION

**Failure to Pay Minimum Wage in Violation of the Arizona Minimum Wage Act and Overtime, A.R.S. §§ 23-362 – 23-364**

(As to Defendant BRIDAL BOUTIQUE)

60. HURT re-alleges and incorporates the above paragraphs as though fully set forth herein.

61. The foregoing conduct, as alleged, violated the Arizona Minimum Wage Act, A.R.S. §§ 23-362 – 23-364.

62. At all relevant times, each Defendant has been, and continues to be, an "employer" within the meaning of A.R.S. § 23-362(B). HURT is an employee within the meaning of A.R.S. § 23-362(A).

63. At all relevant times, BRIDAL BOUTIQUE has either "employed" or jointly employed HURT as defined by A.R.S. § 23-362(D).

64. Section 23-363(A) of The Arizona Minimum Wage Action, A.R.S. § 23-363(A) provides that "[e]mployers shall pay employees no less than the minimum wage... ."
As a result of BRIDAL BOUTIQUE's refusal to make payment for payroll checks earned by HURT, BRIDAL BOUTIQUE has failed to pay HURT the prevailing minimum wage in Arizona in violation of A.R.S. § 23-363(A).

65. BRIDAL BOUTIQUE violated the Arizona Minimum Wage Action by knowingly failing to compensate HURT Arizona's mandated minimum wage in violation of A.R.S. § 23-363(A).

66. Specifically, BRIDAL BOUTIQUE violated the Arizona Minimum Wage Action by refusing to pay HURT, as described above, so as to cause her wages to at times fall below the minimum wage rate mandated by the State of Arizona.

67. With respect to Plaintiff Hurt, she generally worked at least eight hours per day, five days per week, often six times per week for BRIDAL BOUTIQUE. At times she worked up to 70-80 hours per week.

68. Further, Section 23-364(D) of the Minimum Wage Act, A.R.S. § 23-364(D) requires employers to maintain records of their employees' wages earned and hours worked for four years and establishes a rebuttable presumption that the employer did not pay the minimum wage if the employer fails to maintain such records. Section 23-364(D) further requires that the employer permit the employee or her representative to "inspect and copy" payroll records upon request. BRIDAL BOUTIQUE did not maintain accurate records of HURT's hours worked or wages earned, as required by A.R.S. § 23-364(D).

69. In accordance with A.R.S. § 23-364(G), HURT is entitled to recover damages in the amount of "the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages," along with any other legal and/or equitable relief the Court deems just and proper.

70. Further, as a result of BRIDAL BOUTIQUE's unlawful acts, HURT is entitled to the statutory remedies provided by A.R.S. § 23-364(G), including reasonable attorney's fees and costs of suit.

## THIRD CAUSE OF ACTION
### Failure to Timely Pay Wages in Violation of the Arizona Wage Act,
### A.R.S. §§ 23-350 – 23-353
(As to Defendant BRIDAL BOUTIQUE)

71. HURT re-alleges and incorporates the above paragraphs as though fully set forth herein.

72. The foregoing conduct, as alleged, violated the Arizona Wage Act, A.R.S. §§ 23-351 – 23-353.

//

73. At all relevant times, each Defendant has been, and continues to be, an "employer" within the meaning of A.R.S. § 23-350(3). HURT is an "employee" within the meaning of A.R.S. § 23-350(2).

74. "Wages," as defined by A.R.S. § 23-350(6), means "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."

75. Section 23-351(A) of The Arizona Wage Act, A.R.S. § 23-351(A), provides:
> Each employer in this state shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees.

76. Section 23-351(C) of The Arizona Wage Act, A.R.S. § 23-351(C), provides, in pertinent part:
> Each employer shall, on each of the regular paydays, pay to the employees all wages due the employees up to such date, except... [o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

77. Section 23-352 of The Arizona Wage Act, A.R.S. § 23-352, prohibits employers from "withhold[ing] or divert[ing] any portion of an employee's wages," unless certain circumstances apply.

78. Section 23-353(A) and (B) of The Arizona Wage Act, A.R.S. § 23-353(A) and (B), provide, in pertinent part:
> (A) When an employee is discharged from the service of an employer, he shall be paid wages due him within seven working days or the end of the next regular pay period, whichever is sooner.
>
> (B) When an employee quits the service of an employer he shall be paid in the usual manner all wages due him no later than the regular payday for the pay period during which the termination occurred.

79. As a result of BRIDAL BOUTIQUE failing to issue checks with sufficient funds, and to date has not provided valid checks, BRIDAL BOUTIQUE has failed to timely pay all wages and overtime wages owed to HURT in violation of A.R.S. §§ 23-351(C) and 23-252. For this same reason, BRIDAL BOUTIQUE has failed to timely pay all wages and overtime wages owed to HURT who was discharged from employment with BRIDAL BOUTIQUE during the statutory period in violation of A.R.S. § 23-353(A) and (B).

80. By failing to pay HURT in accordance with Arizona's wage payment laws, BRIDAL BOUTIQUE willfully failed and refused to timely pay all wages and overtime compensation due to HURT in violation of A.R.S. §§ 23-351 - 23-353.

81. As a result of BRIDAL BOUTIQUE's unlawful acts, HURT is entitled to the statutory remedies provided by A.R.S. § 23-355(A).

## FOURTH CAUSE OF ACTION
### Breach of Contract
(As to Defendant CARLA and Defendant BRIDAL BOUTIQUE)

82. HURT re-alleges and incorporates the above paragraphs as though fully set forth herein.

83. On or around August 2017, CARLA and HURT entered into a written agreement where HURT would be fifty percent (50%) owner in BRIDAL BOUTIQUE with CARLA retaining fifty percent (50%).

84. HURT was to contribute $25,000 to BRIDAL BOUTIQUE

85. HURT took out loans in the amount of $20,067 from Pearl Capital on August 22, 2017, $30,000 from Yellowstone Financial on September 11, 2017, and $10,000 from ML Factors on September 29, 2017 totaling over $60,000 as an owner and partner in BRIDAL BOUTIQUE as a contribution to the business and in satisfaction of the agreement.

86. On or around December 22, 2017 HURT received notice that her membership interest agreement in BRIDAL BOUTIQUE had been voided and would not be honored due to

HURT not assisting BRIDAL BOUTIQUE and CARLA in obtaining outside financing for BRIDAL BOUTIQUE.

87. BRIDAL BOUTIQUE and CARLA blatantly disregard the $60,000 in loans that HURT contributed to BRIDAL BOUTIQUE just months prior.

88. BRIDAL BOUTIQUE and CARLA have breached the ownership agreement by removing HURT from the business after she had fully complied with the terms of the agreement.

89. HURT has been damaged by no less than $60,000.

**FIFTH CAUSE OF ACTION**
**Tortious Interference with Contract**
(As to Defendant LARKIN)

90. HURT re-alleges and incorporates the above paragraphs as though fully set forth herein.

91. Upon information and belief, on around November 2017, CARLA met LARKIN. CARLA told HURT that LARKIN would be assisting them in finding loans for BRIDAL BOUTIQUE.

92. Upon information and belief, on around December 2017, CARLA and LARKIN began a romantic relationship and formulated a plan to push HURT out of ownership in BRIDAL BOUTIQUE.

93. LARKIN was aware that HURT and CARLA owned BRIDAL BOUTIQUE as equal partners and had an agreement in place.

94. Upon information and belief, LARKIN intentionally caused CARLA to distrust HURT to a point where CARLA changed the locks to the boutique and threatened legal action if HURT were to return to the place of business.

95. Shortly thereafter, LARKIN and CARLA removed HURT from the articles of incorporation for BRIDAL BOUTIQUE and LARKIN is now named as an owner of BRIDAL BOUTIQUE.

96. HURT has been harmed in that she felt that she would be criminalized for re-entering the place of business. HURT has lost ability to make an income from the store due to being blocked from access.

97. As a result of LARKIN's conduct, HURT seeks compensation in accordance with damages to be proven at trial.

### SIXTH CAUSE OF ACTION
### Defamation
(As to Defendant CARLA)

98. HURT re-alleges and incorporates the above paragraphs as though fully set forth herein.

99. HURT received a phone call from David Smith an employee of Pronovias.

100. Pronovias is a dress company that was one of BRIDAL BOUTIQUE's largest accounts.

101. During the phone call, David Smith tells HURT that CARLA told him that HURT had embezzled $300,000.00 from BRIDAL BOUTIQUE, stole over 100 dresses, and ruined the business.

102. David Smith cautioned HURT that CARLA was planning on spreading this story to others in the industry.

103. These false allegations have destroyed HURT's reputation in the small wedding industry and as a result, HURT has suffered damages.

104. As a result, HURT seeks damages in amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, HURT pray for judgment as follows:

1. An award to HURT of damages in the amount of unpaid compensation, plus interest, and penalties subject to proof at trial;

2. An award to HURT of damages in the amount of unpaid minimum wage compensation, plus interest, and penalties subject to proof at trial;

3. An award to HURT of damages in the amount of unpaid overtime compensation, plus interest, and penalties subject to proof at trial;

4. An award to HURT of damages for BRIDAL BOUTIQUE's failure to provide accurate itemized wage statements;

5. An award to HURT of damages for BRIDAL BOUTIQUE's for waiting time penalties;

6. An award for the return payment of $60,000 in loans secured by HURT;

7. An award reaffirming the validity of the breached contract;

8. An award of civil penalties and attorney's fees and costs

9. Such other and further relief as the Court deems appropriate and proper.

Dated: July 11, 2018                    **OH LAW GROUP PLLC**

By: _E.OC_
Eric O'Connor, Esq.
Attorney for Plaintiff Julie Hurt

- 14 -
COMPLAINT FOR DAMAGES